RICHARD S. ARNOLD,
Chief Judge, with whom McMILLIAN, MAGILL, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges, join, dissenting.
I agree with Judge Loken that a contract was impaired by the Minnesota Legislature’s amendment of section 61B. I also believe that impairment was substantial within the meaning of the Contracts Clause, and not sufficiently justified. I therefore respectfully dissent.
The lead opinion holds that there was no contract to be impaired when the Minnesota Legislature amended § 61B to exclude out-of-state-resident life-insurance policyholders and other beneficiaries from its coverage. As Judge Loken’s opinion explains, it is settled law that obligations between private parties which are mandated by statute may nonetheless be contractual and enforceable as such. The statute which created the Minnesota Life and Health Insurance Guaranty Association states that the Association was created to protect the rights of policy-owners and other beneficiaries by guaranteeing the obligations owed them by insurance companies. Minn.Stat. § 61B.02 subd. 2 (1990) (“The purpose of sections 61B.01 to 61B.16, is to protect policyowners, death benefit certificate holders, insureds, beneficiaries, annuitants, payees, and assignees of life insurance policies, health insurance policies, annuity contracts and supplemental con-tracts____”). The duty to guarantee the obligations of member insurance companies appears to be the Association’s primary reason for existence. The power to collect assessments from member companies exists to enable the Association to fulfill that duty. A guaranty is itself a kind of contract, an undertaking to fulfill the obligation of another if that other is in default.
It seems improbable that the Legislature would create a separate, nonprofit legal entity and endow it with the power to collect assessments from member insurance companies without demanding reciprocal performance from the Association. The words of the statute belie such a possibility: “If a domestic insurer is an impaired insurer [unable to meet its obligations to policyholders and other beneficiaries], the association shall ... guarantee, assume, or reinsure, or cause to be guaranteed, assumed, or reinsured, the covered policies of the impaired insurer____” Minn.Stat. § 61B.06 subd. 1(b); see also § 61B.06 subd. 2 (pertaining to foreign insurers). The lead opinion today holds the Association did not owe a contractual duty to guarantee all covered policies because a legislature must exhibit a clear indication that it intends to bind itself contractually before it will be considered to be so bound. The Legislature in the instant case did not bind itself, however; it bound the Association. The Legislature created the Association to collect membership fees from insurance companies and to assume the obligations of those *561 companies should they become “impaired.” I therefore agree with Judge Loken that the obligations owed by the Association, even though their origin is in the statute, are nonetheless contractual and not merely “statutory.”
It follows that the Minnesota Legislature’s amendment of the statute was an impairment of a contract. Two sets of contractual relationships were impaired by the Legislature’s action: that between Honeywell’s trustee and the Association, and that between the trustee and ELIC. The former is affected because the Association, under the amended statute, is released from most of its duty to guarantee the obligation owed the trustee. The latter is affected because the trustee contracted with ELIC under the prior version of the statute, and consequently under the assumption that the GICs were fully guaranteed by the Association.
Judge Loken’s concurring opinion concludes that there was only a partial destruction of the contract in this case, because the amendment merely diminished the Association’s obligation to guarantee the GICs, rather than destroying that obligation completely. As Judge Loken recognizes, a substantial impairment need not be a total destruction to violate the Contracts Clause. I agree that the impairment in this case was substantial. Indeed, the Minnesota Legislature chose which investments to protect and which to abandon at the level of the individual, according to the individual’s state of residence. It specifically intended to abrogate the Association’s duty to guarantee a given obligation based on the individual investor to whom that duty was owed. It therefore seems appropriate to view the Legislature’s action as a complete destruction of those individual contractual relationships.
The Supreme Court has held that the Constitution does not prevent a legislature from working a substantive change in the law, and impairing contracts thereby, as long as it had sufficient justification for doing so. “[Ljegis-lation adjusting the rights and responsibilities of contracting parties” will not violate the Contracts Clause if it is created “upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption.” Allied Structural Steel v. Spannaus, 438 U.S. 234, 244, 98 S.Ct. 2716, 2722, 57 L.Ed.2d 727 (1978) (internal quotation omitted).
One possible justification for the amendment could be to avoid unforeseen consequences or windfall benefits. Under that view, the Legislature could not have foreseen that Minnesota’s Association would be the only one which guaranteed GICs as “covered policies.” To the contrary, it was not only foreseeable, but readily ascertainable, that other states did not treat GICs the way Minnesota did. Minnesota’s Commissioner and its State Supreme Court both came to that conclusion in the 1980s.
Minnesota also, it is argued, could not have intended to guarantee coverage of policies based simply on the residence of a trustee. The coverage mandated by such a rule, the argument continues, is far more expansive than the Legislature could have anticipated. Perhaps the Legislature did not anticipate that the Association would incur such a large obligation. But it should have; the language of the statute is not so ambiguous that such a reading should be surprising. Under the subdivision which applies to out-of-state impaired insurers, the statute requires the Association to “guarantee, assume, or reinsure or cause to be guaranteed, assumed, or rein-sured, the covered policies of residents, and shall make or cause to be made prompt payment of the impaired insurer’s contractual obligations which are due and owing to residents.” Minn.Stat. § 61B.06 subd. 2. It was clear when Honeywell applied for coverage of its ELIC GICs that GICs were already “covered policies” in Minnesota. The ambiguity is allegedly whether “residents” could foreseeably have included a trustee which held several “covered policies” on behalf of both resident and non-resident beneficiaries. The statute defines “resident” in § 61B.03: “ ‘Resident’ means any person who resides in this state at the time the impairment is determined and to whom contractual obligations are owed.” “Person,” according to the statute, “means any individual, corporation, partnership, association or voluntary organization.” Minn.Stat. § 61B.03 subd. 12-13. The drafters should have real *562 ized that individual corporations, partnerships, associations, and voluntary organizations could hold numerous covered policies on behalf of employees or other beneficiaries. I therefore cannot agree that the Legislature’s amendment of the statute is justified because of unforeseeable consequences.
That the amendment imposed a retroactive change raises the “hurdle” the state must clear in order to justify a substantial impairment of contracts. Legislation which makes prospective changes affecting private contracts is an appropriate and commonplace legislative function; private contracting parties, especially in regulated industries, should expect that laws and regulations may change and affect their future dealings. We examine the state’s justification for retroactive changes more carefully because the opposite is generally true: private contracting parties should and do expect that the conditions under which they contracted will remain in effect unless and until there is a change. They do not normally expect lawmakers to change the basic assumptions underlying those agreements so as to affect legal obligations incurred, or rights vested, in the past. See Minnesota Ass’n of Health Care Facilities, Inc. v. Minnesota Dep’t of Pub. Welfare, 742 F.2d 442, 450-51 (8th Cir.1984) (upholding prospective change but striking down retroactive change because it “disrupt[ed] settled and completed financial arrangements under contracts made in reliance on existing law”), cert. denied, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985); Holiday Inns Franchising, Inc. v. Branstad, 29 F.3d 383, 385 (8th Cir.) (observing that retroactive changes which alter prior contractual relationships have “almost uniformly been declared unconstitutional,” and that “this is a datum on which [parties] are presumably allowed to rely while bargaining”), cert. denied, — U.S. -, 115 S.Ct. 613, 130 L.Ed.2d 522 (1994).
The Minnesota Legislature in this case deliberately effected a retroactive change in the law to allow the Association to avoid a $110 million payout. The Minnesota Supreme Court has held that the Legislature’s amendment was a change, and not a clarification of the statute. Honeywell, Inc. v. Minnesota Life & Health Ins. Guar. Ass’n, 518 N.W.2d 557, 562 (Minn.1994). The Legislature’s action was a deliberate, retroactive change in the law which altered the settled contractual duties of the Association, and greatly impaired Honeywell’s right to payment. The size of the payout, while substantial, does not seem to me to provide sufficient justification for the change. Indeed, the large size of the payout serves only to underscore the substantiality of the obligation that the Legislature has nullified.
Many reasons underlay the determination of the Framers to create a new Constitution. Perhaps none was more prominent than their conviction that States should not be allowed to destroy or water down contracts for the payment of money. The Contracts Clause “was perhaps the strongest single constitutional check on state legislation during our early years as a Nation____” Allied Structural Steel Co. v. Spannaus, supra, 438 U.S. at 241, 98 S.Ct. at 2720-21 (footnote omitted). I regret that this Court today shrinks from enforcing this part of the Constitution, which is designed to safeguard a basic human right, the right to make private contracts. It is not a coincidence that most of the people injured by this statute cannot vote for the Minnesota Legislature.
I respectfully dissent.